## Penick, etc. v. Tribble, etc.

(Decided October 9, 1914.)

### Appeal from Christian Circuit Court.

1. **Bills and Notes—Joint Obligors—How Liable to Obligee—Liability of each to the Other.**—Where the names of two or more persons appear as payors in a note, in the absence of a statement in the note showing a contrary relation, they will be presumed to be joint obligors; that is, jointly and severally liable to the obligee for the full amount of the note. But as between themselves, and according to that doctrine of the law known as contribution their liability, though equal, is separate; and if one of them pay the obligation in whole or in part, he can recover of the other or others such proportion of the amount so paid by him as he or they should have legally contributed if they had shared in the payment.

2. **Bills and Notes—Contribution Between Joint Purchasers and Obligors.**—Where two persons become joint purchasers of a farm and give their joint note to the vendor for $3,000.00 of the purchase money, secured by a lien on the whole farm, each of them takes title to an undivided half of the land, and if both vendees die before anything is paid on the note and the executor of the one first dying pays thereon $1,500.00 from his estate, it will be proper, in adjusting the equities between the devisees or heirs at law of the deceased owners of the land, for the court to make those of each contribute to the payment of the balance due on the lien note in the ratio of what each of the deceased owners should, as between themselves, have contributed, had they paid it in full while both were living and each had equally participated in its payment. This method of adjustment is in accord with section 2080 Kentucky Statutes, which provides: "Contributions shall take place between heirs and distributees on the same principles as between co-obligors."

SELDON Y. TRIMBLE, W. T. FOWLER and TRIMBLE & BELL for appellants.

C. H. BUSH for appellees.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

In 1893 Charles T. Lewis, by deed, conveyed 302 acres of land in Christian County to Mrs. M. E. Tribble and G. W. Tribble, her stepson, jointly. The grantees paid in cash a part of the consideration for the land and executed to the grantor, Charles T. Lewis, their joint note for $3,000.00 thereof, of date January 1, 1894, due one year after date, bearing six per cent interest from date, and secured by a vendor's lien on the land. The note was sold and assigned by Charles T. Lewis to Mrs. W. L. Nourse, who in turn sold and assigned it to Mrs. P. A. Crabtree, at whose death it became the joint property of her children, George I. Crabtree, Mrs. Ida Bowles and Mrs. Emma Renshaw, the present owners.

George W. Tribble, one of the joint owners of the land, died in March, 1895, leaving a will, the material parts of which are as follows:

"Second: I will that the policy on my life in the Northwestern Life Insurance Co., be collected and paid to Mrs. W. L. Nourse, on the note held by her against my mother and myself."

"Third: In consideration of the great love and affection that I bear to my stepmother, I will to her during her life, my one-half interest in the Ridgeway place upon which we now reside, and at her death to my dear father,

should he be living; and should he be dead, to be equally divided between my brothers and sisters.''

''Fourth: I will that all my personal property be sold, and after all my debts have been paid, the remainder I will to my dear father, to do as he pleases with. I appoint my father as executor of this, my will, and ask no bond be required of him, March 2, 1895.''

The will was admitted to probate, and the testator's father, Peter Tribble, therein appointed executor, duly qualified as such. After the death of G. W. Tribble, whom she survived seventeen years, Mrs. M. E. Tribble owned an estate in fee in and to an undivided half of the 302 acre farm, and an estate for life in the other undivided half thereof, and the whole was held and enjoyed by her until her death, which occurred in June 1911. She was survived by her husband, Peter Tribble, and a daughter, Lucy N. Penick, wife of L. P. Penick, who was born of her marriage with Peter Tribble. By a previous marriage Peter Tribble had two sons, Geo. W. Tribble and A. S. Tribble.

Mrs. M. E. Tribble also left a will, later probated, by which she devised to her daughter, Lucy N. Penick, all her estate of whatsoever kind. At Mrs. M. E. Tribble's death her surviving husband, Peter Tribble, as remainderman under the will of his son, George W. Tribble, became seized of an estate in fee simple in and to an undivided half of the 302 acres of land, and his daughter, Lucy N. Penick, under the will of her mother, took a like estate in the other half. Peter Tribble and his daughter made a division of the 302 acres, by which she obtained 133½ acres, including the dwelling house and practically all the improvements, and he 151½ acres. Deeds were duly executed between the parties pursuant to the division, the husband of Lucy N. Penick uniting with her in the deed to her father.

After getting the deed to the 151½ acres received in the division with his daughter, Peter Tribble divided it into two parcels. One of these parcels containing 61½ acres, lying next to Mrs. Penick's land, he conveyed to her; the other parcel, containing 90 acres, he conveyed to his son, A. S. Tribble. It is conceded by the parties that Peter Tribble, as executor of the will of George W. Tribble, deceased, in 1895 collected the insurance payable at his death on the policy of $1,500.00 held by him, and at once paid it on the $3,000.00 lien note then held by

Mrs. Nourse, but now owned by the appellees, Bowles, Renshaw and Crabtree. It also appears from the record that George W. Tribble, prior to his death, paid more than his half of the interest which accrued on the note between the date of its execution and that of his death. In addition, after his death, there was paid on the lien note $651.25 as of July 24, 1909; this amount having been realized from the sale and conveyance of eighteen of the 302 acres to Trice by M. E. and Peter Tribble.

On May 20, 1912, A. S. Tribble, suing in his own right and for Mrs. Sarah E. Blakey, to whom he has contracted to sell the parcel of land from the 302 acre farm, conveyed him by his father, Peter Tribble, instituted this action in the court below against Lucy N. Penick, her husband, L. P. Penick, and George A. Crabtree, Ida Bowles and Emma Renshaw, owners of the $3,000.00 lien note, to compel the payment by Mrs. Lucy N. Penick of the balance due thereon, or subject so much as she may own of the 302 acre farm as may be necessary for that purpose, to its payment.

It is, in substance, alleged in the petition that the payment on the note by his executor of the $1,500.00 of insurance on the life of George W. Tribble substantially paid the one-half of the note for which his estate was liable; as between his estate and Mrs. M. E. Tribble, the other half should then or thereafter have been paid by the latter, and as this was not done by her, what was then her undivided half of the 302 acre farm, later devised to her daughter Lucy N. Penick, should be subjected to the payment of the balance.

It is admitted by appellants that after the death of G. W. Tribble, and when the executor of the latter paid on the purchase-money note now held by the appellees, Bowles, Renshaw and Crabtree, the $1,500.00 he had received on the testator's insurance policy, there was due on the note $3,054.00. Althougth, as far as the holders of the note were concerned, each of the obligors was liable, and the entire three hundred acres of land bound, for the full amount of the note, as well as the balance remaining due thereon after the payment of the $1,500.00 by the executor of G. W. Tribble, and this was so held by the circuit court by the judgment rendered, it was necessary for that court to determine the liability of the obligors as between themselves. This it also did, holding that of the $3,054.00 due on the note prior to the pay-

ment of the $1,500.00 by G. W. Tribble's executor, one-half thereof, $1,527.00, was owing by the estate of G. W. Tribble and the other half, $1,527.00, by Mrs. M. E. Tribble; and that upon the payment of the $1,500.00 by the executor of G. W. Tribble, the latter's estate was still owing thereon $27.00, and Mrs. M. E. Tribble $1,527.00. So much of the judgment as bears upon this question reads as follows:

"It is now adjudged by the Court that the contention of plaintiff be and is hereby sustained, and that as an equitable settlement between the said Mary E. Tribble and G. W. Tribble, the land of G. W. Tribble should only be charged with the balance due by the said G. W. Tribble after the payment of the said $1,500.00 as aforesaid, and that the land of the said Mary E. Tribble should be charged with the balance; and it appearing that the land of the said Mary E. Tribble descended to Lucy N. Penick and that she also received by the deed from her father one-half in value of the G. W. Tribble land, it is now adjudged that the said land received by her from her mother, the said M. E. Tribble, be and is hereby charged with all of the balance due on said note except the said sum of $27.00; and it is further adjudged that the portion she received of the G. W. Tribble land from her father, be charged with one-half of that ($27.00) and that the ninety acres of the G. W. Tribble land received by A. S. Tribble under the deed from his father be charged with the other half. It is therefore adjudged by the court that the said A. S. Tribble owes of said note, as between him and the said Lucy N. Penick, the sum of $13.50, with six per cent interest from the nineteenth day of May, 1895, and that his land be charged therewith, and a lien is declared thereon for same. It is further adjudged that the said Lucy N. Penick owes and that she pay all the balance due on said note and there is a lien given on all of her land, consisting of one hundred ninety-five acres, for same. This declares, settles and adjudges the rights of said parties and is considered by the Court as an equitable settlement of this matter between them. It is further adjudged that the said Ida Bowles, Emma Renshaw and George I. Crabtree have a lien upon all four of said tracts of land for their debt; and that said lien be enforced and enough of said land be sold to pay said debt, interest and costs; and it is adjudged that the land of the said Lucy N. Penick be first sold, or enough of it,

to pay all said debt that is adjudged against her and all of the costs adjudged against her; and if her land is not sufficient to pay said indebtedness then enough of the land of A. S. Tribble to pay the balance, shall be sold, but if the land of the said Mrs. Penick be sufficient to pay the indebtedness adjudged against her, then only enough of the land of A. S. Tribble to pay the amount adjudged against him shall be sold * * *."

The appellants, Lucy N. Penick and her husband, L. P. Penick, have appealed from this judgment and it is now contended by them that it was not intended by G. W. Tribble, nor contemplated by his will that the insurance money collected upon his life by his executor should be especially applied to his one-half of the note for purchase money which had been executed by him and his stepmother for the 302 acres of land jointly conveyed them, but that it should go as a credit on the whole note, leaving his moiety of the land and the moiety of his stepmother equally chargeable with and liable for the $1,554.00 remaining unpaid of the note. This contention is not sustained by the will or any fact presented by the record. The provision of the will with reference to the insurance money and its application to the note, is as follows:

"I will that the policy on my life in the Northwestern Insurance Company be collected and paid to Mrs. W. L. Nourse (the then owner) on the note held by her against my mother and myself."

There is nothing in this language which indicates that the testator intended to pay the whole note or that he considered himself or his half of the land liable for more than one-half thereof. The note is not mentioned as his note, but is referred to as the note held by Mrs. Nourse "against my mother and myself." In this connection the following circumstances may properly be considered in arriving at the intention of the testator as expressed in the will. First, the insurance policy of $1,500.00 on the life of the testator was procured by him after the execution by himself and mother of the note of $3,000.00. If it was his intention to relieve the latter of the payment of her half of the note and pay the whole of it himself, and the insurance on his life was obtained with the view of providing a way of carrying out this intention, if he did not live long enough to do so, it would have been more in accord with such purpose, and better secured its consummation, for him to have obtained

$3,000.00 insurance on his life, which would have equalled the full amount of the note, rather than the $1,500.00, equalling one-half thereof, actually obtained.

Second, where the names of two or more persons appear as payors in a written obligation, in the absence of a statement therein showing a contrary relation, they will be presumed to be joint obligors; that is, jointly and severally liable to the obligee. But as between themselves, and according to that doctrine of the law known as contribution, their liability, though equal, is separate; and if one of them pay the obligation in whole or in part, he can recover of the other or others, such proportion of the amount so paid by him as he or they should have legally contributed if they had shared in the payment. We find nothing in the $3,000.00 note, in the will or elsewhere in the record, that can be regarded as overthrowing the presumption of the joint liability of G. W. Tribble and Mrs. M. E. Tribble on the purchase-money note, or that conduces to show that there was any agreement between them that the former would relieve the latter of the payment of her proportion of the note, or that manifested any intention on his part to make himself or his estate liable for the whole thereof.

Third: If, as further contended by appellants, it was the intention of G. W. Tribble that his stepmother should be relieved of paying what would be left of the $3,000.00 note, after crediting it with the $1,500.00 of insurance money, by applying his personal property to the payment of such remainder, such intention is not expressed in that provision of the will disposing of the personal estate, which, after directing that the personal property be sold, declares: "After all *my* debts have been paid, the remainder I will to my dear father to do as he pleases with." There is in this language no direction to the executor to apply the proceeds of the personal property to the payment of the purchase-money note upon which he and his stepmother were jointly liable. The direction as to the personal property is to pay no particular debt, and if it had been the intention of the testator to include in the expression "my debts," Mrs. M. E. Tribble's proportion of the $3,000.00 note, it would have been natural for him to have given some expression of it. So in using the words "my debts" in the clause relating to the personal property, it was, we think, the evident intention of the testator to distinguish his individual debts

from the debt he was jointly owing with Mrs. M. E. Tribble and to direct that the proceeds of his personal property be applied to the satisfaction of the debts upon which he was individually or alone liable, and to exclude from the debts thus to be paid the note of $3,000.00 upon which he and his stepmother were jointly liable, mentioned in the second clause of the will, practically his half or proportion of which was therein directed to be paid with the insurance money.

It is fairly apparent from the record that the personal estate of the testator, exclusive of the $1,500.00 derived from the insurance policy, did not exceed $660.00. There were burial expenses and other small debts paid out of this $660.00, and if what was left of this $660.00 after paying the individual debts of the testator had been applied on what was left of the joint note of the testator and Mrs. M. E. Tribble, after crediting it with the $1,500.00 of insurance money, there would still have remained unpaid of the joint note several hundred dollars. On the other hand, if the entire proceeds of the personal estate, exclusive of the insurance policy, had been paid on the joint note of the testator and Mrs. M. E. Tribble, there would have been left unpaid of other and individual debts of the testator several hundred dollars. As it is not disputed that the testator was an intelligent young man and in his right mind when he wrote the will, the presumption must be indulged that he then knew what estate he had and that his personal property, including his insurance money, would not pay the entire amount of the $3,000.00 note, and he was therefore satisfied to have his half of that note paid with the proceeds of the insurance policy, and such other and individual debts as he might owe out of the proceeds of his personal property, as by this means there would be a remnant of the proceeds of the personal property left to go to his father, who, according to the evidence, was an old man without any estate. On the other hand, to have directed the application of the proceeds of the personal estate to the payment of Mrs. M. E. Tribble's half of the $3,000.00 note would, he well knew, have left no remainder of the personal property to go to the father. When the will was made, G. W. Tribble was ill with consumption, without hope of recovery or expectation of increasing his estate. So he knew what he then had was all he would leave, and that whatever provision he might

make for his aged father would have to be made out of what he then possessed.

Our conclusion that the testator's intention was as we have indicated, is also sustained by the third clause of the will, which gives his stepmother, Mrs. M. E. Tribble, his one-half of the farm for life, which shows he evidently believed that from what she might make on the whole farm she could pay what remained of the $3,000.00 note or half of it, after crediting it with the insurance money. That clause then gives his one-half of the land at the step-mother's death to his father, should he be living, but should he be dead, to his brother and half-sister equally. In view of this provision of the will, we are loath to believe that after paying his half of the $3,000.00 note and then giving his step-mother the use of his half of the land for life, with remainder to his father if living and if dead to his brother and sister, that the testator contemplated handing it down to his father, or his brother and sister, encumbered with the stepmother's part of the debt. If such had been his intention, it would seem that the will would, in express terms, have made the step-mother's part of the $3,000.00 note a charge upon the testator's half of the land. While it abundantly appears from the record before us that G. W. Tribble had great affection for his step-mother, Mrs. M. E. Tribble, and also for her daughter, his half-sister, the appellee, Lucy N. Penick, and that he had been invariably liberal toward the stepmother, it has not been made to appear that he intended that the payment of her half of the $3,000.00 note should be made out of his estate or made a charge upon his half of the land. His affection for his step-mother and the fact that he knew his father and half-sister would have a home with her, doubtless induced him to devise her his half of the land for life. He also knew that at the death of the step-mother, her half of the land would go to her daughter, Lucy N. Penick, but it is not apparent from anything appearing in the record that his generosity to the step-mother made him willing, after substantially paying for his half of the land, to have it burdened with the payment of the step-mother's half of the $3,000.00 note, which would benefit his half-sister to the exclusion of his father and full brother.

Mrs. M. E. Tribble evidently understood that the payment of the insurance money on the $3,000.00 note by the executor of G. W. Tribble was, as between her and his estate, a substantial satisfaction of the half of the note

for which he was liable. This understanding on the part of Mrs. Tribble is shown by the evidence to have been manifested by her several years after the death of G. W. Tribble and following an agreement with her husband, Peter Tribble, whereby they made an actual or tentative division of the 302 acre tract of land, for she then sold off of the portion which she obtained by the division eighteen acres to John B. Trice for $651.00, and this sum she paid on the balance due on the $3,000.00 note. According to the evidence, she gave as a reason for making this sale, that she wanted the money to pay on the land; that George's part had been paid and that she wanted to pay as much as she could on hers.

It seemed to have been the purpose of the circuit court to adjust the rights and equities between the parties to this action as they should have been adjusted, as of the date of the payment of the $1,500.00, between G. W. Tribble and M. E. Tribble had the former lived until that time, and the action been brought by one of them. The judgment was authorized by Section 2080, Kentucky Statutes, which provides: "Contributions shall take place between heirs and distributees on the same principles as between co-obligors." In Smith's Ex'r. v. MacMillan, 14 R., 433, it was held that where the land of a father, upon which liens existed to satisfy the debts of the father, had been divided among his heirs, each heir should be made to contribute to pay the lien debt, and if any one of the heirs failed to contribute his part then his allotment of the land should be sold to pay such part; furthermore, that the allotment to one heir should not be sold to pay the entire lien debt. Smith's Admr. v. Catlin, 23 R., 381.

In our opinion the rights of the parties were properly determined by the judgment of the court below. As between the estate of G. W. Tribble and Lucy N. Penick, the land of A. S. Tribble was properly charged with one-half of the balance that G. W. Tribble should have paid on the $3,000.00 note after the payment thereon of the $1,500.00 of insurance money by his executor, with interest from the 18th of May, 1895; and the remainder of the balance due on the note was properly charged to the appellant, Lucy N. Penick and made a lien on her land, as she received, not only her mother's half of the land for which the note was given, but also one-half of G. W. Tribble's half thereof.

The alleged inequalities in the division made of G. W. Tribble's half of the 302 acres of land between the appellant, Lucy N. Penick, Peter Tribble and the appellee A. S. Tribble, and the conveyances incident thereto, of which appellants complain, are not patent to us; and the latter's acquiescence therein down to the bringing of this action, affords ground for the suspicion that such acquiescence would have continued but for its institution.

Judgment affirmed.